IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOEL SOL, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 3:23-cv-606 |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Joel Sol ("Plaintiff" or "Sol"), complaining of Defendant City of Dallas, Texas ("the City"), and for cause would respectfully show unto the Court as follows:

### I.   PARTIES

1. Plaintiff, Joel Sol, is an adult individual and resident of Tarrant County, Texas.

2. Defendant the City of Dallas, Texas is a governmental entity duly organized and existing under the laws of the State of Texas. The City of Dallas funds and operates the Dallas Police Department ("DPD"), which, along with the Dallas City Council, Dallas City Manager's office and Chief Eddie Garcia are responsible for the implementation of the DPD's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The DPD is also responsible for preventive, investigative, and enforcement services for all citizens of the City of Dallas. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant, the City of Dallas. The City may be served with citation herein by and through its agent for service of process,

Christopher Caso, City Attorney, Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this matter involves a federal question under the ADA and GINA.

4. Venue is proper in this Court as a substantial part of the events or omissions giving rise to claims occurred within the Dallas Division of the Northern District of Texas.

## III.   PROCEDURAL PREREQUISITES

5. On January 1, 2022, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

6. More than sixty days have elapsed since Plaintiff filed his charge with the EEOC.

7. Plaintiff received a right to sue letter dated December 22, 2022, and fewer than ninety days have elapsed since Plaintiff received same.

## IV.   FACTUAL BACKGROUND

8. Plaintiff is a military veteran who was honorable discharged from the United States military on or about May 7, 2021.

9. Plaintiff desired to continue his public service by seeking employment with the City of Dallas and the Dallas Police Department as a peace officer. On or about June 22, 2021, Plaintiff applied for a position as a peace officer with the City of Dallas.

10. On June 28, 2021, Plaintiff was notified that he met the initial requirements for employment as a peace officer with the City of Dallas. Specifically, Plaintiff had the requisite education and experience to take the Police Officer Trainee exam for the Fiscal Year 2021 Quarter 3 position.

11. As part of the hiring process, Plaintiff filled out a number of forms, including a Dallas Police Application Personal History Statement, Dallas Police Department Preliminary Interview Form, and an Employment Application.

12. On July 21, 2021, Plaintiff was notified that he successfully completed the physical test component of the hiring process with the City of Dallas. On July 24, 2021, Plaintiff passed the Applicant Interview portion of the hiring process. On or about August 21, 2021, Plaintiff passed the polygraph component of the hiring process.

13. On November 12, 2021, Plaintiff took the written component of his psychological exam.

14. Sometime thereafter, Plaintiff was scheduled for an interview with a therapist as part of the hiring process.

15. As part of the pre-employment interview with the therapist, Plaintiff was asked about any disabilities or conditions from his military service. Plaintiff has a total disability rating from the Department of Veteran's Affairs ("VA") of 100%, as well as lower percentage disability ratings stemming from physical conditions, including TMJ, cervical strain, left shoulder strain, right shoulder strain, and tinnitus, among other conditions.

16. The therapist began to note the 100% disability rating but failed to fully understand and contemplate that a 100% VA disability rating does not necessarily mean an applicant cannot work. In fact, the therapist was uninterested in further documentation or explanation regarding the disability rating. In fact, the therapist even inquired, "What does it state in your DD214 on the discharge block? It's medical discharge, right?" Plaintiff replied that he was not medically discharged, but rather honorably discharged. The therapist continued to persist under this logic that Plaintiff was medically discharged after the therapist misunderstood

the nature of the VA disability rating. The therapist again asked to confirm if Plaintiff was medically discharged. Plaintiff again replied that he was not and that he finished his contract and military duty.

17. The therapist assumed based on this VA disability rating that Plaintiff was unfit for duty as a peace officer. The therapist did not care to hear any explanation and assumed that the rating was indicative of an inability to work.

18. When asked about medications being taken, Plaintiff informed the therapist that he was on anti-depressants.

19. When asked about history of family illness, Plaintiff informed the therapist that Plaintiff's brother suffered with PTSD from his military service and that the condition was service related. The therapist took further notes and focused in on this fact of Plaintiff's familial history.

20. Plaintiff has also been diagnosed with anxiety disorder and depression.

21. Next, the therapist began to discuss Plaintiff's psychology test score. The therapist indicated that Plaintiff passed the test but that the score Plaintiff received was "too high" and explained that the test was developed in a way that indicated untruthfulness if the score was "too high."

22. Plaintiff responded that he was truthful on the exam – in fact, Plaintiff had been truthful, transparent, and forthcoming throughout the entire hiring process despite the therapist's unfounded doubts. The therapist explained to Plaintiff that he needed to take the exam again because the score Plaintiff received was "too high." The therapist further inquired if Plaintiff had been truthful on the exam, to which Plaintiff replied in the affirmative. Plaintiff also mentioned

that he had some questions about the test because there were a few confusing words in the questions.

23. The therapist told Plaintiff, "I know some of the test questions might be hard." The therapist informed Plaintiff that some words on the test are complicated. Rather than leave the comment there, the therapist further inquired whether Spanish was Plaintiff's first language. Plaintiff never mentioned or suggested that there was a language barrier when taking the exam. The therapist assumed that Plaintiff's score on the test or confusion regarding some words on the test stemmed from Plaintiff's Puerto Rican background or ability to speak Spanish. Plaintiff replied that Spanish was his first language, however, Plaintiff is also fully fluent in English and has no difficulty reading or writing in English.

24. Still, however, the therapist persisted that Plaintiff could take the test in Spanish and that it might be easier for Plaintiff to understand if the test was in Spanish. Plaintiff again reiterated that English was not a problem for him. The therapist was still adamant that Plaintiff take the test in Spanish and again urged the same. The therapist then said something along the lines of "I mean if the medications are working, I guess…"

25. Plaintiff retook the test at a later date and was notified that the therapist had failed Plaintiff. No explanation was given why Plaintiff was not cleared for hire despite the fact that he had successfully passed all tests required.

26. Plaintiff failed to be hired due to his nationality and VA disability rating that the therapist did not understand and did not care to understand.

V.   CAUSES OF ACTION

**Count One – Discrimination Based on Genetic Information
in Violation of 42 U.S.C. § 2000ff-1(a)**

27.     Plaintiff incorporates and adopts by reference all previous paragraphs as if fully set forth herein.

28.     During Plaintiff's application and hiring process with Defendant, the Defendant was covered by GINA.

29.     Under GINA, an employer commits an unlawful employment practice if it fails or refuses to hire or discharges "any employee, or otherwise … discriminate[s] against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee[] because of genetic information with respect to the employee[] or" if it limits, segregates or classifies its employees "in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a).

### Count Two – Discrimination Based on the Americans with Disabilities Act
### In Violation of 42 U.S.C. § 12101, et seq.

30.     Plaintiff incorporates and adopts by reference all previous paragraphs as if fully set forth herein.

31.     The facts as outlined above evidence a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

32.     Plaintiff was a qualified individual with a disability as defined in 42 U.S.C. § 12131(2) with his disabilities affecting major life activities and work.

33.     The City is a public entity as defined in 42 U.S.C. § 12131(1) and is thus covered by the ADA mandate.

34. The City provides a facility whose operation constitutes a program and service for ADA purposes.

35. The City refused to reasonably accommodate Plaintiff's disability and modify their services in violation of Title II of the ADA.

36. The acts and//or omissions of the City undermined and interfered with Plaintiff's rights for which the City is liable.

37. These acts and/or omissions were the proximate cause and moving force behind Plaintiff's damages and the decision to not hire Plaintiff for employment.

### Count Three – Discrimination Based on National Origin
### In Violation of 42 U.S.C. § 2000e, et. seq.

38. Plaintiff incorporates and adopts by reference all previous paragraphs as if fully set forth herein.

39. Plaintiff identifies that he is a member of a protected class.

40. In addition to being a member of a protected class, a motivating factor for Plaintiff's adverse employment decision was Plaintiff's national origin. Plaintiff has a Puerto Rico background and speaks the Spanish language – facts that Defendant and its employees were aware of in all interactions with Plaintiff.

41. The City of Dallas is an employer within the meaning of Title VII and employs more than fifteen (15) individuals.

42. The City of Dallas intentionally discriminated against Plaintiff because of his national origin in violation of Title VII and excluded Plaintiff from employment with the City on account of same.

43. The conduct of the City deprived the Plaintiff of equal protection of the law in violation of the Fourteenth Amendment of the Constitution of the United States as enforced by 42 U.S.C. § 2000e(2). Such deprivations were discriminatory based national origin.

44. The City of Dallas, through its City Manager, the Dallas Police Department and its command staff, had the duty to instruct, supervise, control, and discipline the Dallas Police Department, through the City Manager, the Dallas Police Department and its command staff, and knew or should have known of the violations of Plaintiff's rights. The City of Dallas, through its City Manager, the Dallas Police Department and its command staff, had the power to prevent or aid in the prevention of the commission of such violations, and could have done so by reasonable diligence, but neglected or refused to do so, resulting in the constitutional violations set forth above.

45. The above-described discriminatory conduct and denial of equal protection of the law was expressly ratified and permitted by the City of Dallas, through its City Manager, the Dallas Police Department and its command staff, acting under color of law, statute, and ordinance, and acting in its capacity as the governing body of the Dallas Police Department, in unlawful, reckless, malicious, and deliberate disregard of Plaintiff's civil rights.

46. The City of Dallas, through its City Manager, the Dallas Police Department and its command staff, had the power to prevent or aid in the prevention of the violation of Plaintiff's civil rights, and could have done so by reasonable diligence, but neglected or refused to do so.

47. The City of Dallas, through its City Manager, the Dallas Police Department and its command staff, directly or indirectly under color of law approved and ratified the unlawful, reckless, malicious, and deliberate disregard of Plaintiff's civil rights.

48. As a result of its concerted, unlawful and malicious conduct towards the

Plaintiff, the City of Dallas, through its City Manager, the Dallas Police Department and its command staff, deprived the Plaintiff of his rights guaranteed under Title VII.

49. As a direct and proximate result of the acts of the City of Dallas, as set forth above, Plaintiff's professional career has been irreversibly damaged. Plaintiff has suffered great emotional damage, mental pain, suffering and anguish, loss of income, embarrassment, loss of esteem in the eyes of the community and his colleagues, and in all reasonable probability, will continue to suffer in this manner far into the future. Plaintiff's damages flow directly from, and are intimately connected to the deprivations, violations, and infringements of the Plaintiff's statutory rights as guaranteed under Title VII.

## VI.    DAMAGES

50. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

51. Defendant's acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff:

    a. Actual damages;

    b. Mental anguish and emotional distress damages in the past and future;

    c. Pre- and post-judgment interest;

    d. Punitive and Exemplary damages;

    e. Attorney's fees and costs of suit; and

    f. Such other and further relief as this Honorable Court deems just and proper.

## VII.    TRIAL BY JURY

52. Plaintiff respectfully requests trial by jury.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, punitive damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully Submitted,

*/s/ Blerim Elmazi*
Blerim Elmazi, Esq.
State Bar No. 24118375
THE LAW OFFICES OF BLERIM ELMAZI
8111 LBJ Freeway, Suite 790
Dallas, TX 75251
Telephone: (817) 438-0123
Blerim@ElmaziLaw.com

**ATTORNEY FOR PLAINTIFF**